ELLIS v. INMAN, POULSEN & CO. et al.

(Circuit Court, D. Oregon. July 30, 1903.)

No. 2,769.

1. MONOPOLIES—ANTI-TRUST LAW—COMBINATION IN RESTRAINT OF INTERSTATE COMMERCE.

A combination between all the lumber manufacturers of a city to raise and maintain the price of lumber to local consumers, and to refuse to sell lumber to consumers who purchase any part of their supply from outside mills, some of such mills supplying the local market being situated in another state, is not in violation of the Sherman anti-trust law, as in restraint of interstate commerce, its effect on such commerce being indirect and incidental only.

At Law. On demurrer to complaint.

Veazie & Freeman, for plaintiff.
Cake & Cake, for defendant Inman, Poulsen & Co.
Wm. D. Fenton, for other defendants.

BELLINGER, District Judge. The defendants, comprising all the lumber manufacturers of Portland, have entered into a combination to monopolize the local lumber market, and to advance the price of lumber sold for use within the city. There are a number of outside mills, including two mills at Vancouver, in the state of Washington, convenient to the Portland market, and capable of supplying that market with rough lumber, but without adequate facilities for supplying finished and kiln-dried lumber. In consequence of the high prices charged by the combination, the plaintiff, who is a contractor and builder in Portland, and others similarly situated, purchased rough lumber at the Vancouver mills, and, being under the necessity of having finished and dried lumber, applied to the defendants therefor. The defendants refuse to sell plaintiff lumber of this character unless he will agree to buy hereafter all the lumber required by him for use in the city of Portland of them, and will pay, in addition to their usual prices, the difference between the prices at which plaintiff purchased rough lumber at Vancouver and the prices charged for that kind of lumber by the defendants. The combination in this case is to advance the price of lumber to Portland consumers. It has no reference to the trade in lumber with Vancouver. If this is a wrong, it is a wrong done to such consumers, who are compelled to pay extortionate prices to the monopoly. It is not contended that the advance of price in the local market —the thing for which the combination was formed— operates in restraint of the trade in lumber with Vancouver. Such advance has a contrary tendency so far as rough lumber is concerned. And it is not apparent why the defendants, having a particular kind of lumber not obtainable elsewhere, may not refuse to sell such lumber to those who patronize outside mills in the purchase of a part of their supplies, or why the defendants may not discriminate in prices in favor of those who purchase exclusively from them. The tendency of this discrimination is to keep those who are compelled to have finished and dried lumber from purchasing rough lumber at outside mills. Assuming that this operates in restraint of the trade in rough lumber between Vancouver and Portland, it is not such a result as follows directly or immediately from the acts complained of. The discrimination is against all outside mills. A relatively small number of these happen to be located at Vancouver. The remainder are in Oregon, and convenient to the Portland market. Among the Portland purchasers of rough lumber at these outside mills there are some who are consumers of finished and dried lumber. Some of these purchasers of rough lumber resort to the mills at Vancouver, and of these some require finished and dried lumber; and it so happens (but as to this the allegations of the complaint are not definite) that the outside mills, including those at Vancouver, cannot or do not furnish an adequate supply of such lumber; and so we at length reach a point where, through the intervention of special and temporary conditions,

the working of the combination tends indirectly to restrain the trade in rough lumber between Vancouver and Portland. It also in the same way tends to create a trade in finished and dried lumber between these points, since there is no reason why the outside mills cannot, in a short time, be prepared to supply the demand for finished and dried as well as rough lumber; and yet the combination cannot be credited, because of this tendency, with being organized in further-ance of such a trade. If the defendants should greatly reduce the price of all kinds of lumber to all purchasers, it would have a tenden-cy to lessen, if it did not destroy, the trade in lumber now carried on between Vancouver and Portland, yet they would not be accused in so doing of acting in restraint of that trade. No more can they be said to be so acting within the meaning of the act of congress when they raise the price of lumber to their Portland consumers, or dis-criminate in the sale of special kinds of lumber in favor of custom-ers who buy exclusively from them.

The demurrer is sustained.